**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERANTH, INC., a Delaware corporation,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>CHOWNOW, INC., a Delaware corporation,<br><br>　　　　　　　Defendant. | Case No.: 3:20-cv-02167-BEN-BLM<br><br>**ORDER GRANTING-IN-PART:**<br><br>**(1) PLAINTIFF'S MOTIONS TO FILE DOCUMENTS UNDER SEAL and**<br><br>**(2) DEFENDANTS' MOTIONS TO FILE DOCUMENTS UNDER SEAL**<br><br>[ECF Nos. 13, 14, 15, 16, 20, 21] |
| CHOWNOW, INC., a Delaware corporation,<br><br>　　　　　　　Counterclaimants,<br>v.<br>AMERANTH, INC., a Delaware corporation;<br><br>　　　　　　　Counterdefendants. | |

## I. INTRODUCTION

Plaintiff/Counter-Defendant Ameranth, Inc., a Delaware corporation ("Plaintiff") brings this action for breach of a patent licensing agreement against Defendant/Cross-Complainant ChowNow, Inc., a Delaware corporation ("Defendant"). ECF No. 1; *see*

*also* ECF No. 12-1 at 6:3-4.  Before the Court are the following Motions: (1) Plaintiff's Motion to File Documents Under Seal, ECF No. 13, and (2) Defendant's Motions to File Documents Under Seal, ECF Nos. 15, 20.

"Open, public courts stand as a pillar of American democracy, to which motions to seal stand in derogation." *Kivett v. Neolpharma, Inc.*, No. 2:20-00664-JDW, 2021 WL 1209844, at *1 (E.D. Pa. Mar. 31, 2021).  However, "all too often, parties pay little attention to a motion to seal that accompanies a complicated filing." *Id.*  Instead, sealing motions often include "only generalized recitations of the factors that a court must consider before placing material under seal." *Id.*  Alternatively, the redactions made may be overly broad, thereby limiting information appropriate for public record in a case.  "Given the important public interest at stake," courts should neither permit parties seal dockets without an adequate showing of injury, *id.*, nor prevent information from being disclosed to the public where the parties did not narrowly tailor their request.  Thus, the Court **GRANTS-IN-PART** both motions according to the terms set forth in the conclusion of this order.

## II.     BACKGROUND

This matter arises from Plaintiff's ownership of several patents, which Plaintiff licensed to Defendant.  *See generally* ECF No. 1.  Defendant eventually ceased paying royalties to Plaintiff on the basis that the patents underlying the licensing agreement had been declared invalid, and as such, Defendant no longer owed royalties.  *Id.*  Plaintiff contends that Defendant's failure to continue paying royalties constitutes a breach of the agreements between the parties.  *Id.*

On November 19, 2020, Plaintiff timely filed a Motion to (1) Dismiss Defendant's Counterclaims for (a) Failure to State a Claim for Relief and (b) Lack of Subject Matter Jurisdiction and (2) Remand to State Court.  Mot., ECF No. 12.  That same day, Plaintiff also filed a Motion to File Documents Under Seal in support of the Motion, ECF No. 13, lodging the documents it sought to seal as ECF No. 14.  On November 20, 2020, Defendant filed a Motion to Seal, seeking to seal portions of its exhibits to the Notice of Removal, ECF No. 15, lodging the documents it sought to seal as ECF No. 16.

On December 7, 2020, Defendant filed amended counterclaims, containing the same claims for relief as its cross-complaint filed in the superior court but adding eight additional claims for relief for (1) declaration of invalidity as to the 9,747,651 Patent (the "651 Patent"); (2) unenforceability of the 8,146,077 Patent (the "077 Patent"); (3) declaration of unenforceability of the 9,009,060 Patent (the "060 Patent"); (4) declaration of unenforceability of the 9,747,651 Patent (the "651 Patent"); (5) bad faith enforcement of patents, 15 U.S.C. § 2; (6) bad faith enforcement of patents through a pattern of sham litigation, 15 U.S.C. § 2; (7) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (8) unjust enrichment. ECF No. 18.

That same day, Defendant also filed its opposition to Plaintiff's Motion, ECF No. 19, along with a Motion to File Documents Under Seal in support of the Opposition as well as documents related to its Amended Counterclaims, ECF No. 20, lodging the documents it sought to seal as ECF No. 21. On December 11, 2020, Plaintiff filed its reply to Defendant's opposition. ECF No. 24.

Due to the number of motions to seal and exhibits thereto, they are summarized as follows:

| ECF No. | Filing Party | Sealed Doc. ECF No. | Ex. | Request to Seal Portions of: Description |
|---|---|---|---|---|
| 13 | Plaintiff | 14 | 1 | Original License Agreement entered into between Ameranth and ChowNow on June 22, 2012 |
| | | | 2 | First Amended License Agreement entered into between Ameranth and ChowNow on December 20, 2013 |
| | | | 5 | First Amended License Agreement entered into between Ameranth and Splick-It on November 19, 2013 |
| 15 | Defendant | 16 | 1 | First Amended License Agreement entered into between Ameranth and ChowNow on December 20, 2013 |
| | | | 12 | Original License Agreement entered into between Ameranth and ChowNow on June 22, 2012 |

| | | | 17 | E-mail correspondence between ChowNow and Ameranth executives and their respective legal counsel, dated October 11, 2018 through July 31, 2020 |
| --- | --- | --- | --- | --- |
| | | | N/a | Cross-Complaint |
| 20 | Defendant | 21 | 1 | First Amended License Agreement entered into between Ameranth and ChowNow on December 20, 2013 |
| | | | 12 | Original License Agreement entered into between Ameranth and ChowNow on June 22, 2012 |
| | | | N/a | Amended Counterclaims |
| | | | N/a | Opposition Brief |

## III. **LEGAL STANDARD**

Except for certain documents "traditionally kept secret," federal courts begin a sealing analysis with "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to seal a judicial record then must "articulate [] compelling reasons supported by specific factual findings," *id.*, that outweigh the general history of access and the public policies favoring disclosure, such as the "public interest in understanding the judicial process," *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir. 1995). The Court "conscientiously balance[s] . . . the competing interests" of the public and the party who seeks to keep certain judicial records secret. *Foltz,* 331 F.3d at 1135. After considering these interests, if the Court decides to seal certain judicial records, it "base[s] its decision on a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434; *see also Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (applying compelling reasons standard to dispositive motions).

A party must satisfy the compelling reasons standard even if the motion, or its attachments, were previously filed under seal or protective order. *Foltz*, 331 F.3d at 1136 ("[T]he presumption of access is not rebutted where . . . documents subject to a protective order are filed under seal as attachments to a dispositive motion."). A party's failure to

meet the burden of articulating specific facts showing a "compelling reason" means that the "default posture of public access prevails." *Kamakana*, 447 F.3d at 1182. In ruling on motions to seal, the Ninth Circuit has recognized that "compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might . . . become a vehicle for improper purposes, such as the use of records to . . . release trade secrets." *Kamakana*, 447 F.3d at 1179. Similarly, other "sources of business information that might harm a litigant's competitive standing" may also constitute a compelling reason to seal, *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978), such as a company's confidential profit, cost, and pricing information, which if publicly disclosed could put the company at a competitive disadvantage, *see Apple, Inc. v. Samsung Elec. Co.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) ("[I]t seems clear that if Apple's and Samsung's suppliers have access to their profit, cost, and margin data, it could give the suppliers an advantage in contract negotiations, which they could use to extract price increases for components.").

## IV.   DISCUSSION

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597 (footnotes omitted). The main reason for this general right is to accommodate "the citizen's desire to keep a watchful eye on the workings of . . . government." *Id.* at 598. However, "the right to inspect and copy judicial records is not absolute." *Id.* at 589. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes," such as "to gratify private spite or promote public scandal," or to serve as a source of "business information that might harm a litigant's competitive standing." *Id.* (internal citations omitted); *see also Kamakana*, 447 F.3d at 1178.

"Even where records do not include trade secrets, they may still be sealed where they could be a "source[ ] of business information that might harm a litigant's competitive standing." *See, e.g.*, *Monster Energy Co. v. Vital Pharm., Inc.*, No. EDCV181882-JGB-

SHKX, 2019 WL 3099711, at *2-3 (C.D. Cal. Jun. 17, 2019) (granting the plaintiff's motion for leave to file portions of exhibit under seal where the information sought to be sealed fell into two categories: "(1) non-public financial information of Monster and third-parties and (2) non-public strategic and business-making information of Monster and third-parties.") (citing *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. Cir. 2016).  Other courts have held that non-public financial, pricing, and strategy information could harm a litigant's competitive standing when deciding to grant motions to seal such information.  *See, e.g.*, *Rodman v. Safeway Inc.*, Case No. 11-cv-03003-JST, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015) (granting the defendant's "narrowly tailored" request to seal "internal, nonpublic information discussing Safeway's pricing strategy, business decision-making, customer research, and financial records, which would expose Safeway to competitive harm if disclosed"); *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1045-46 (N.D. Cal. 2018)  (granting motion to seal documents containing nonpublic pricing terms, private bank account information, and the personal identification information of parties and nonparties).

The Federal Circuit in *Apple Inc. v. Samsung Elecs. Co.*, concluded that the district court abused its discretion by refusing to seal product-specific financial information because the parties "could suffer competitive harm if this information is made public" because their "suppliers could have access to their profit, cost, and margin data," which would "give the suppliers an advantage in contract negotiations, which they could use to extract price increases for components."  727 F.3d at 1225.  As a result, the court held that the parties had "a significant interest in preventing the release of their detailed financial information." *Id.*  The court noted that even the Supreme Court has indicated that "sources of business information that might harm a litigant's competitive standing" may be sealed. *Nixon*, 435 U.S. at 598.

Here, the portions of the briefs, declarations, and exhibits sought to be sealed contain, reference, or discuss confidential, nonpublic information regarding Plaintiff's licensing agreements with Defendant and other parties as well as amounts Defendant paid

as royalties under those agreements. The Court notes that authority exists for sealing a majority of the records at issue, and each party's respective motion(s) to seal are unopposed. For instance, the Ninth Circuit has held that compelling reasons exist to seal "pricing terms, royalty rates, and guaranteed minimum payment terms found in [a] Licensing Agreement." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008). However, "[a]ny order sealing documents should be 'narrowly tailored' to remove from public view only the material that is protected." *Ervine v. Warden*, 214 F. Supp. 3d 917, 919 (E.D. Cal. 2016) (citing *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 513 (1984)). Here, the Court finds that while each exhibit the parties seek to seal contains some information appropriate for sealing, each exhibit does not qualify as narrowly tailored. Thus, the Court has considered each of the documents the parties designated for sealing, and as articulated in the table below, determines which documents may remain under seal or redacted and which documents must be unsealed:

### A. Plaintiff's First Motion to Seal

Plaintiff's First Motion to Seal (ECF No. 13), which seeks to seal the documents filed under seal in ECF No. 14, is **GRANTED-IN-PART** as follows:

| Request to Seal Portions of: | | Basis: | Result: |
|---|---|---|---|
| Ex. | Description | | |
| 1 | Original License Agreement entered into between Ameranth and ChowNow on June 22, 2012 | Plaintiff argues that Exhibits 1 and 2 "are confidential patent license agreements pursuant to which Ameranth granted a license to Defendant and Cross-Plaintiff ChowNow in exchange for ChowNow's obligation to pay certain quarterly royalties to Ameranth based on ChowNow's product deployments and commercial activities in certain fields of use." ECF No. 13 at 2:15-19. Plaintiff contends that if the licensing agreements are disclosed, "other potential | **GRANTED-IN-PART**. Compelling reasons exist to seal "pricing terms, royalty rates, and guaranteed minimum payment terms found in [a] Licensing Agreement." *In re Elec. Arts, Inc.*, 298 F. App'x at 569. As such, the Court agrees these licensing agreements are information appropriate for sealing. However, the Parties have redacted the |
| 2 | First Amended License Agreement entered into between Ameranth and ChowNow on December 20, 2013 | | |

| | | | |
|---|---|---|---|
| | | licensees of the patents, or other existing licensees of the patents, might use the information to try to force Ameranth to provide similar or better licensing rates to them." *Id.* at 3:21-24. Additionally, "[c]ompetitors of the licensees might be able to undercut the licensees' operating costs if they obtain information about the rates the licensees are obligated to pay in connection with certain types of transactions." *Id.* at 3:24-26. | entirety of the License Agreement, which is in no way narrowly tailored with the exception of the introductory paragraph listing the parties, some section numbers and headings, and the signature page.  After reviewing the actual agreements, the redaction is unquestionably overly broad.  For instance, Section 7.2.1 states that "ChowNow is a limited liability company duly organized, validly existing and in good standing under the laws of California." *See* ECF No. 14 at 8. This is public information and is inappropriate for redaction.  As another non-exhaustive example Sections 8.2, 9.1, 9.2.1, 9.5-9.14 contain standard contract provisions such as a severability provision, survival clause, and notice provision.  These are not confidential business information or private subject to protection or appropriate for sealing. *See Ervine v. Warden*, 214 F. Supp. 3d at 919. Plaintiff and Defendant are ordered to meet and confer on each of the |
| 5 | First Amended License Agreement entered into between Ameranth and Splick-It on November 19, 2013 | Plaintiff argues that "Exhibit 5 is a confidential patent license agreement pursuant to which Ameranth granted a license to non-party Splick-It, Inc. ("Splick-It") to use and practice Ameranth patents in exchange for Splick-It's full and timely payment of all amounts due to Ameranth under the agreement." ECF No. 13 at 2:19-22.  Plaintiff asserts that "[e]ach license agreement contains confidential and sensitive pricing information and use provisions that, if publicly disclosed, could be harmful to Ameranth, ChowNow, and/or Splick-it or put them at a competitive disadvantage." ECF No. 13 at 2:22-25.  Plaintiff also notes that "[e]ach agreement contains a contractual confidentiality provision." ECF No. 13 at 2:25-26. | |

| Request to Seal Portions of: | | Basis: | Result: |
|---|---|---|---|
| Ex. | Description | | |
| | | | licensing agreements and file a new version of the licensing agreements that is appropriately redacted and **_narrowly_** tailored. One copy of each of the newly lodged and narrowly tailored licensing agreements shall submitted and filed under seal by the Clerk of the Court. No additional motions to seal need to be submitted with the new lodged documents. |

### B. Defendant's First Motion to Seal

Defendant's First Motion to Seal (ECF No. 15), which seeks to seal the documents filed under seal in ECF No. 16, is **GRANTED-IN-PART** as follows:

| Request to Seal Portions of: | | Basis: | Result: |
|---|---|---|---|
| Ex. | Description | | |
| 1 | First Amended License Agreement entered into between Ameranth and ChowNow on December 20, 2013 | N/a | **GRANTED-IN PART**. The Court has already ordered that this document shall be sealed in accordance with the terms stated above. |
| 12 | Original License Agreement entered into between Ameranth and ChowNow on June 22, 2012 | N/a | **GRANTED-IN PART**. The Court has already ordered that this document shall be sealed in accordance with the terms stated above. |
| 17 | E-mail correspondence between ChowNow and Ameranth executives and | Defendant argues that "[t]his correspondence contains highly confidential and competitively sensitive financial information and settlement discussions between the Parties and | **GRANTED-IN-PART**. Again, this request is not narrowly tailored. Upon review, the Court finds that the only information in the e-mails |

| | | | |
|---|---|---|---|
| | their respective legal counsel, dated October 11, 2018 through July 31, 2020 | specifically references several provisions of the License Agreements and alleged breaches thereof." ECF No. 15 at 4:5-8. Defendant elaborates that "[t]hroughout the correspondence, ChowNow states how much it had paid Ameranth through 2018, and Ameranth states how much ChowNow allegedly owes Ameranth as well as and Ameranth's basis for those calculations." *Id.* at 4:8-10. Further, Defendant argues that "[t]he subject line of many of the emails indicates that the Parties understood those communications to be subject to Federal Rule of Evidence 408." *Id.* at 4:10-12. | appropriate for redaction and sealing is the monetary figures Defendant paid Plaintiff. As such, Defendant must file a new version of this exhibit with only the figures after the $-sign disclosing how much Defendant paid redacted. |
| N/a | Cross-Complaint | Defendant argues that "[t]he Cross-Complaint itself directly cites to and quotes from Exhibits 1, 12, and 17, and consequently, contains the same protected information as those Exhibits." *Id.* at 4:13-14. Defendant argues that the Cross-Complaint has been redacted rather than withheld in its entirety, and as such, the request is narrowly tailored. *Id.* at 6:20-22. | **GRANTED-IN-PART**. Like many of the other requests addressed by this order, this request is also overly broad. Although unlike the licensing agreements, Defendant has not redacted the entire document, the Amended Counterclaims is also not as narrowly tailored as is appropriate. First, the section numbers of the licensing agreement are redacted, *see* ECF No. 1-4 at 4:8, 12:3, 12:4, 12:6, 19:10, even though the actual section numbers and section |

headings are not redacted in some of the licensing agreements. Even if they were redacted in the agreements, the section heading or number is not confidential business information.

Second, ECF No. 21 at 11:27-12:3 seeks to seal information as to what was licensed, but it is already publicly disclosed that "[t]he License Agreement explicitly licenses the '733, '850, '325, and the '077 Patents." *See* ECF No. 1-4 at 11:8. Thus, the fact that the License Agreement is for patents is no secret.

Third, the parties seek to seal the vast majority of a particular e-mail discussing the Parties' contentions as to what the patents cover. *See* ECF No. 1-4 at 19:27, 19:28-20:2, 20:5-11. However, that issue is part of the subject of this lawsuit. Thus, an e-mail discussing those contentions is not appropriate for sealing. Accordingly, ECF No. 1-4 at 19:27, 19:28-20:2,

| | | | 20:5-11 is not appropriate for sealing.<br><br>However, the Court does find information regarding certain terms of the licensing agreement appropriate for sealing. *See* ECF No. 1-4 at 11:25-26.<br><br>Defendant shall file a version with only the aforementioned approved redaction within ten (10) days of this order. |
|---|---|---|---|

### C. Defendant's Second Motion to Seal

Plaintiff's Second Motion to Seal (ECF No. 20), which seeks to seal the documents filed under seal in ECF No. 21, is **GRANTED-IN-PART** as follows:

| **Request to Seal Portions of:** | | **Basis:** | **Result:** |
|---|---|---|---|
| **Ex.** | **Description** | | |
| 1 | First Amended License Agreement entered into between Ameranth and ChowNow on December 20, 2013 | N/a | **GRANTED-IN-PART**. The Court has already ordered that this document shall be sealed but only if the parties re-submit a narrowly tailored version of the agreements. |
| 12 | Original License Agreement entered into between Ameranth and ChowNow on June 22, 2012 | N/a | |
| 17 | E-mail correspondence between ChowNow and Ameranth executives and their | N/a | As stated above, this request is **GRANTED-IN-PART**. Again, this request is not narrowly tailored. Upon review, |

| | | | |
|---|---|---|---|
| | respective legal counsel, dated October 11, 2018 through July 31, 2020 | | the Court finds that the only information in the e-mails appropriate for redaction and sealing is the monetary figures Defendant paid Plaintiff. As such, Defendant must file a new version of this exhibit with only the figures after the $-sign disclosing how much Defendant paid redacted. |
| N/a | Amended Counterclaims | Defendant argues that "[t]he Amended Counterclaims directly cite to and/or quote from Exhibits 1, 12, and 17, and consequently, contains [sic] the same protected information as those Exhibits." *Id.* at 3:17-18. Defendant argues that the Cross-Complaint has been redacted rather than withheld in its entirety, and as such, the request is narrowly tailored. *Id.* at 6:20-22. | Like many of the other requests addressed by this order, this request is also overly broad. Although unlike the licensing agreements, Defendant has not redacted the entire document, the Amended Counterclaims is also not as narrowly tailored as is appropriate. First, the section numbers of the licensing agreement are redacted, *see* ECF No. 21 at 4, even though the actual section numbers and section headings are not redacted in some of the licensing agreements. Even if they were redacted in the agreements, the section heading or number is not confidential business information.<br><br>Second, Defendant |

redacts in certain areas the patent numbers that are the subject of the licensing agreements, *see* ECF No. 21 at 44:27, even though in other areas those same patent numbers are not redacted, and thus, are already publicly available, *see* ECF No. 21 at 11:25. Further, the simple term "Fields of Use" is redacted throughout the Amended Counterclaims. This term has no grounds for sealing.

Third, ECF No. 21 at 11:27-12:3 seeks to seal information as to what was licensed, but it is already publicly disclosed that Plaintiff owns patents and "has forced countless companies into patent license agreements." *See* ECF No. 21 at 3:21-23. Thus, the fact that the License Agreement is for patents is no secret.

Fourth, the parties seek to seal the vast majority of a particular e-mail discussing the Parties' contentions as to what the patents cover. However, that issue is

| | | | |
|---|---|---|---|
| | | | part of the subject of this lawsuit. Thus, an e-mail discussing those contentions is not appropriate for sealing. Accordingly, ECF No. 21 at 20:25-21:9, and 21:11-12 is not appropriate for sealing.<br><br>However, the Court does find the following information appropriate for sealing: (1) information regarding certain terms of the licensing agreement, *see* ECF No. 21 at 12:14-15; (2) how much Defendant paid Plaintiff in royalties, *see id.* at 21:10-11, 52:24; and (3) the definition of the term "Fields of Use" (rather than just simple reference to the term), *see id.* at 47:24-48:6. |
| N/a | Opposition Brief | Defendant argues that "[t]he Opposition Brief directly cites to and quotes from Exhibits 1, 12, and 17, and consequently, contains the same protected information as those Exhibits." *Id.* at 3:19-20. Defendant argues that the Cross-Complaint has been redacted rather than withheld in its entirety, and as such, the request is narrowly tailored. *Id.* at 6:20-22. | **GRANTED-IN-PART**. Again, this request includes significant material that either is not confidential information subject to sealing or is already public record. For instance, the patent numbers, term "Fields of Use," and section numbers of the various licensing agreements is not information that warrants sealing. *See,* |

| | |
|---|---|
| | *e.g.*, Opposition, ECF No. 19 at 8:11-12, 8:15, 8:20, 8:21, 9:10, 14:20, 14:24, 14:28, 18:25, 18:28, 20:12, 23:1. Further, discussion of the contentions and arguments being advanced in this case is not appropriate for sealing. *See id.* at 9:12-14, 9:17-26, 17:5-6, 17:7-9, 19:1-11, 20:12-14.<br><br>However, the Court finds the following information appropriate for sealing: (1) the substantive terms in the licensing agreements that may not be a standard term, and as such, could be prejudicial if they became public information, *see* Opposition, ECF No. 19 at 8:19-20, 14:21-23, 19:26-28, and (2) the amounts Defendant paid Plaintiff, *see id.* at 9:27-28. |

## V. CONCLUSION

Parties frequently file motions to seal as an afterthought "as they wrap up a big filing." *Kivett*, 2021 WL 1209844 at *2. However, "[a]ny party seeking to file material under seal must pay careful attention and make a specific, detailed showing about the harm that would result from disclosure." *Id.* More importantly, even where a document contains some information appropriate for sealing, a party may not seal the entire document and

must narrowly tailor that party's request by only redacting the information appropriate for sealing. In this case, the requests at issue were not narrowly tailored. Thus, the Court rules on the motions as follows:

1. Plaintiff's Motion to Seal (ECF No. 13) is **GRANTED-IN-PART** as follows:

    a. Redacted versions of the documents Plaintiff seeks to seal have been filed on the public docket. However, these redactions are overly broad. As such, Plaintiff is directed to lodge under seal a new version of each exhibit it seeks to seal with more narrowly tailored and limited redactions according to the Court's direction.

2. Defendant's First Motion to Seal (ECF No. 15) and Second Motion to Seal (ECF No. 20) are **GRANTED-IN-PART** as follows:

    a. Redacted versions of the documents Defendant seeks to seal have been filed on the public docket. However, these redactions are overly broad. As such, Defendant is directed to lodge under seal a new version of each exhibit it seeks to seal with more narrowly tailored and limited redactions according to the Court's direction.

3. Both parties shall re-lodge under seal the documents they wish to have sealed within ten (10) days of this order. At that time, the Clerk of the Court is directed to file the documents under seal in accordance with this order.

4. For the duration of this case, both parties are prohibited from filing further motions to seal that seek to seal documents the Court has already ordered sealed. Instead, in future briefing, any further any citation to or reliance on documents the Court has previously ordered sealed shall refer back to the ECF number and page number of the previously sealed exhibit or document.

**IT IS SO ORDERED.**

DATED: August 18, 2021

**HON. ROGER T. BENITEZ**
United States District Judge